IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

BRENITA LANAY COMBS.,    )
                         )
    Plaintiff,            )
                         )
v.                       )    Case No.  4:19-cv-00389-MDH
                         )
ANDREW M. SAUL           )
ACTING COMMISSIONER OF   )
SOCIAL SECURITY,         )
                         )
    Defendant.           )

## ORDER

Before the Court is Plaintiff Brenita Lanay Combs' appeal of Defendant Social Security Administration Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act. Plaintiff exhausted her administrative remedies, and the matter is now ripe for judicial review. After carefully reviewing the record, the Court finds that the Commissioner's decision is supported by substantial evidence in the record as a whole, and the decision is **AFFIRMED.**

## BACKGROUND

Combs filed her application for disability benefits on July 19, 2016, and she alleged disability beginning July 31, 2014. Plaintiff alleged disability due to a combination of physical and mental impairments. These alleged impairments include adjustment disorder, major depressive disorder, panic disorder, anxiety disorder, obesity, degenerative disc disease, osteoarthritis, obstructive sleep apnea, and hypertension. After denials at the lower level, Combs had a hearing with an Administrative Law Judge ("ALJ") on May 15, 2018. The ALJ issued a decision on June 29, 2018 denying Combs benefits for the period prior to April 20, 2018. Combs appealed that

decision to the Appeals Council, which declined review of the ALJ's decision. The ALJ's decision was the final decision of the Commissioner. Combs then filed this action.

**STANDARD**

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006). Finally, while a

deficiency in opinion writing is not enough to merit reversal where it has no practical effect on the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 213 F.3d 984, 988 (8th Cir. 2000).

## DISCUSSION

In its findings of facts and conclusions of law, the ALJ found:

> 3. Since the alleged onset date of disability, July 31, 2014, the claimant has had the following severe impairments: adjustment disorder; major depressive disorder; panic disorder; anxiety; obesity; hypertension; degenerative disc disease; and osteoarthritis. (20 CFR 404.1520(c))…
>
> 4. Since the alleged onset date of disability, July 31, 2014, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)…
>
> 5. After careful consideration of the entire record, the undersigned finds that since July 31, 2014, the claimant has the residual functional capacity to perform light work as defined 20 CFR 404.1567(b), with some additional limitations. The claimant can lift and carry routine, and repetitive tasks, but not at a production rate pace; she can occasionally interact with the public; and is limited to simple work-related decisions.

(Tr. 14-16).

Combs argues that the ALJ's residual functional capacity ("RFC") as to Combs' physical impairments is unsupported by substantial evidence. Combs additionally argues that the ALJ's RFC as to Combs' mental impairments is unsupported by substantial evidence.

## Physical Impairments

1. **Obesity**

Combs first argued that the ALJ improperly considered Combs' obesity. The ALJ found that Combs' obesity was a severe impairment (Tr. 14). Combs argued that the ALJ offered "only a statement acknowledging Combs' obesity," and rather should have considered the impact of Combs' impairment of obesity on her musculoskeletal impairments, as well as on her mental

impairments. Combs cites *Dameron v. Astrue*, 2009 U.S. Dist. LEXIS 56213 (W.D.Mo. 2009), in which the court remanded with instructions to the ALJ to explain how he reached his conclusions on whether obesity caused any physical or mental limitations. *See also, Dorch v. Colvin*, 2013 WL 5442279 (W.D. Mo. 2013) (remanded because the ALJ "failed to discuss what effect Plaintiff's obesity had on her work abilities"); *Cauthon v. Colvin,* Case 4:15-cv-00232-MDH, Document 7, p. 4 (W.D. Mo. Apr. 22, 2016) ("while the ALJ found Claimant to have a severe impairment of obesity, he did not conduct any analysis to support this finding, or to factor it into his RFC determination").

Here, the ALJ's analysis is distinguishable from the cases above. Aside from noting that Combs' obesity was a severe impairment, the ALJ also acknowledged that Combs' weight and body mass index (BMI) fell within the clinically obese range. (Tr. 19). The ALJ further acknowledged that "[o]besity can, particularly when considered in conjunction with other severe impairments, adversely impact a claimant's residual functional capacity." (Tr. 19). The ALJ also cited Combs' severe hypertension and noted that obesity and hypertension could "complicate a number of other impairments." (Tr. 19).

The Eighth Circuit has held that "when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015). In *Wright*, the ALJ explicitly stated that he considered the combined effects of the claimant's obesity with the claimant's other impairments when determining that he retained the ability to perform a range of sedentary work. *Id*. In *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009), the Eighth Circuit held that reference to a claimant's obesity may be sufficient to avoid reversal. There, the Court noted:

> Here, the ALJ made numerous references on the record to Heino's obesity. The ALJ stated that Heino was "5′1″ tall and weighed 230 pounds at the time of the

> hearing." He also stated that "[a]t one time she had weighed as much as 325 pounds." In his hypothetical to the VE, the ALJ stated that Heino "has a history of obesity." The record indicates that the ALJ considered Heino's obesity when evaluating her claim. Because the ALJ specifically took Heino's obesity into account in his evaluation, we will not reverse that decision.

*Id*. at 881-882.

The ALJ's analysis in this case is akin to those at issue in *Wright* and *Heino*. The ALJ made several references on the record to Combs' obesity and expressly acknowledged that obesity, on its own and in combination with other severe impairments, can adversely impact a claimant's RFC. This Court thus finds that the ALJ appropriately considered Combs' obesity.

### 2. Substantial Evidence

Combs argues that the ALJ's RFC is additionally unsupported by substantial evidence because it lacked sufficient medical evidence. The ALJ gave "little" weight to the opinions of the State agency physicians as to Combs' physical functional limitations. (Tr. 19-20). Combs cites *Brewer v. Berryhill*, Case 4:17-cv-00526-MDH, Doc. 21, p. 3 (W.D. Mo. Aug. 28, 2018), for the proposition that the ALJ's decision here should be remanded because it lacks medical opinion evidence. In *Brewer*, however, the court noted that there were no medical opinions in the record, and so the record lacked medical opinions to support the RFC. *Id*. Specifically, the court found that the "ALJ's RFC must be supported by some medical evidence and an assessment of Plaintiff's ability to perform light work." *Id*. The record in the instant case, and the ALJ's review of it, is sufficient here.

The ALJ gave some weight to Sean Neely, D.O.'s February 2017 state agency medical consultant opinion in evaluating Combs' impairments (Tr. 19-20). Dr. Neely opined that Combs could lift and carry 50 pounds occasionally and 25 pounds frequently and stand, sit, and walk for 6 of 8 hours each. (Tr. 81). The ALJ, giving some weight to Dr. Neely's opinion, appropriately

found that the record as a whole established greater limitations as set forth in the RFC (Tr. 16, 19-20-81).

Combs further argues that the ALJ inappropriately evaluated her subjective complaints. The evidence in the record does not support Combs' position. Objective medical evidence is a proper factor for consideration in evaluating subjective complaints. 20 C.F.R. § 404.1529. The ALJ considered that Combs underwent conservative treatment over time (Tr. 18-20), with infrequent and relatively mild ailments reported regarding her knee pain and later back, shoulders, and hips. (Tr. 18-19). *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir.2015) (ALJ properly considered the plaintiff's relatively conservative treatment history). Furthermore, the ALJ also appropriately considered that Combs' examinations and imaging failed to support her allegations of total disability (Tr. 18-20). The ALJ considered that the imaging showed "mostly mild degenerative changes." (Tr. 19-20).

Furthermore, during various appointments, Combs' reported symptoms inconsistent with her alleged disability. Notably, she denied fatigue, muscle aches, joint pain, arthritis, weakness, numbness, tingling, stiffness, and cramping. (Tr. 329, 340-41, 343, 367, 487). In June 2016, she reported only moderate problems sitting, standing, and walking long distances due to chronic pain. (Tr. 357). She also reported that her blood pressure medication worked well, and she denied chest pain, shortness of breath, and dizziness. (Tr. 366-67, 396, 487, 557). Additionally, Combs' daily activities also conflicted with her allegations of disabling limitations. (Tr. 16, 19-20). Among other activities, the ALJ noted Combs' ability to walk nearly daily for exercise (Tr. 19), and Combs retained the ability frequent the library, prepare simple meals, perform household chores, and shop. (Tr. 40-41). *See Thomas v. Berryhill*, 881 F. 3d 672, 676 (8th Cir. 2018) ("Thomas's activities—caring for her young son, preparing his meals, doing housework, shopping for groceries, handling

money, watching television, and driving a car when necessary, among other things—showed that she could work.").

Here, the full record showed a wide range of daily activities, conservative treatment, and examination findings that were inconsistent with disabling physical impairments. The record thus demonstrates substantial evidence to support the ALJ's RFC as to Combs' physical impairments.

**Mental Impairments**

Combs argues that the ALJ's RFC as to her mental impairments is unsupported by substantial evidence. Specifically, Combs cites that the "ALJ's decision is completely silent as to the third party statement from…A. Wilkerson, who interviewed Combs on 9/30/16." (Tr. 199-200). Wilkerson noted Combs had difficulty with coherency, concentrating, and answering. Wilkerson observed Combs was aggressive, would not stay focused, and disliked any personal questions. (Tr. 199). Combs notes that it is necessary for the ALJ to consider information from third parties. 20 C.F.R. § 404.1529. However, an ALJ may consider evidence without directly citing to it. *See Chaney v. Colvin*, 812 F.3d 672, 678 (8th Cir. 2016).

Here, the ALJ found that Combs had severe mental impairments (Tr. 14), and explicitly recognized that the record demonstrated that she was irritable and endorsed a distrust of others (Tr. 15, 17). The ALJ additionally noted that "[s]ome issues with focus and concentration have been noted." (Tr. 16). The ALJ also recognized evidence in the record that was inconsistent with Wilkerson's statement: Combs presented as cooperative during treatment encounters and generally exhibited normal social behavior in clinical settings. (Tr. 15, 447, 450, 455, 483, 524). Further, Combs maintained occasional contact with her children, talked with her grandchild, lived with a friend and family, and reported having a few friends and one good friend. (Tr. 247, 356, 481, 483-84, 511, 557). The ALJ also cited examinations showing generally normal mental processes,

including adequate attention and concentration. (Tr. 16, 355, 387, 448, 451, 456). Finally, the ALJ limited Combs to simple, routine, and repetitive tasks, but not at a production rate pace; occasional interaction with the public; and simple, work-related decisions to account for her mental limitations. (Tr. 16). *See Buckner v. Astrue*, 646 F.3d 549, 559-60 (8th Cir. 2011) (holding that, even if the ALJ did not explicitly evaluate a third party statement, remand is not required where the same evidence that the ALJ used to discredit the claimant's claims also discredits the third party's statement.).

Combs also argues that the ALJ's decision does not explain inconsistencies between the ALJ's RFC determination and the medical opinions of Dr. Ciali, Dr. Daughtery, and Dr. Eckert, which the ALJ afforded "great" weight. (Tr. 20). Combs essentially argues that the ALJ's RFC should have included all of the limitations included in the medical opinion or explain why it did not do so. However, this Court has held that the ALJ is not required to adopt all limitations proposed by a doctor, even if that doctor's opinion is accorded significant weight. *Cannady v. Colvin*, No. 4:14-cv-00372-NKL, 2015 WL 139762, at *5 (W.D. Mo. 2015). Nor is the ALJ required here to explain precisely why he excluded certain limitations. "[N]othing requires an ALJ to provide reasons for failing to adopt limitations from consulting physicians, as an ALJ would have to do if it were a treating physician's opinion." *Hilderbrand v. Berryhill*, No. 4:16-CV-405 (CEJ), 2017 WL 2618269, at *22 (E.D. Mo. 2017) (citing *Davison v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)). *See, McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) ("We review the record to ensure that an ALJ does not disregard the evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation.").

For the reasons above, the ALJ's decision reflects an appropriate evaluation of Combs' entire record and RFC as to her mental impairments. The Court finds that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the reasons set forth herein, the Court finds there is substantial evidence in the record as a whole to support the ALJ's determination. Accordingly, the Commissioner's decision denying benefits to Brenita Lanay Combs is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: August 26, 2020

      */s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**United States District Judge**